Michael J. Scorelle v. Commissioner.
Scorelle v. Commissioner
Docket No. 18250.
United States Tax Court
1949 Tax Ct. Memo LEXIS 29; 8 T.C.M. (CCH) 1009; T.C.M. (RIA) 49275; November 29, 1949
*29 Michael J. Scorelle, pro se. Clay C. Holmes, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency in income tax in the amount of $2,778.52, and a penalty in the amount of $138.93, for the year 1943. The issues to be determined are, as follows: (1) Did the respondent err in calculating petitioner's taxable income by taking 20 per cent of his reported gross income; (2) did the respondent err in including in the petitioner's taxable income certain unexplained bank deposits; (3) did the respondent err in disallowing a deduction of $465 claimed by petitioner for real estate taxes; (4) did the respondent err in asserting a 5 per cent negligence penalty? From evidence, both documentary and oral, we make the following Findings of Fact Petitioner, an individual, filed his tax return for the period here in question with the collector of internal revenue for the second district of New York. Under date of January 16, 1943, petitioner entered into a contract with Victor M. Calderon, and Calburn Corporation, to become active manager of the latter's business in California. Under the contract, petitioner *30 was to receive no salary for the first year. Petitioner went to California to open the business office for Calbury Corporation, but due to shortage of merchandise he was unable to accomplish anything, and on June 1 he closed the office and returned to New York City. Before petitioner left New York City for California, he owned 200 bags of paprika (purchased about April 14, 1942, at a cost of $10,340), and 31 cases of olive oil, which he turned over to Victor M. Calderon Co. on a consignment basis. Under date of April 20, 1943, while in Los Angeles, petitioner purchased 350 bags of almonds for $10,927.50. He paid $2,000 of the amount by check and contracted to pay 6 per cent per annum on the deferred balance. Petitioner sold 50 bags of the almonds to American Food Exchange, Inc., New York City, September 9, 1943, for $1,712.36, and in connection with the transaction petitioner paid a brokerage commission of $34.25. He sold the remaining 300 bags to Graham Co., Inc., New York City, September 14, 1943, for $9,661.28. During September 1943, petitioner paid $67.66 storage on the almonds. Under date of October 17, 1940, petitioner's wife, Mary V. Scorelle, executed an instrument *31 in which she granted and released her interest (with certain exceptions not here material) in certain residential property located at 219 Melbourne Road, Great Neck, Nassau County, Long Island, New York, to the petitioner. The instrument directed attention to the fact that there was a mortgage outstanding on the property in the amount of $9,500, held by the Emigrant Industrial Savings Bank. During the year 1943, petitioner paid the Emigrant Industrial Savings Bank $949.73. Opinion (1) In his deficiency notice, the respondent makes his determination as to petitioner's taxable income from business, in the following manner: Gross sales as disclosed by return
$21,759.71
Gross profit as determined (20% of
gross sales)
4,351.94
Loss reported on return
(1,574.31)
Increase in income
$ 5,926.25
It appears from the pleadings and the evidence that both parties in this proceeding are satisfied to accept the gross sales as disclosed by the return filed by the petitioner. Therefore, the only question we have to consider is the amount of cost petitioner proved in regard to the sales. The evidence shows that part of the merchandise that was sold during 1943 was purchased *32 the previous year, i.e., 200 bags of paprika. We have no evidence concerning the method of bookkeeping employed by the petitioner, and to assume that he used an accrual method would be mere conjecture on our part. An important part of the proof of cost of merchandise sold is a determination of the method of accounting employed. Particularly is this true when the evidence shows that part of the merchandise sold was purchased in a previous year. Any other conclusion might permit a double deduction. Petitioner's proof of cost as to 350 bags of almonds also falls short. Here again the method of accounting is important for, if petitioner is on a cash basis, he has proved only $2,000, for that is the amount the evidence shows that he paid. The balance was deferred and no showing was made that it was ever paid. Assuming, as we do, that petitioner's gross sales for 1943 amounted to $21,759.71, we conclude that he has fallen far short in his proof that the respondent erred in calculating that his taxable income from business was 20 per cent of the reported gross sales. (2) We next consider whether respondent erred in including in petitioner's taxable income certain unexplained bank deposits *33 in the amount of $3,250.34. The only explanation given by the petitioner was, as follows: "THE WITNESS [Petitioner]: The unexplained bank deposits: I am sorry, I have no evidence except my agreement with the Calbury corporation which states therein that I am not to do anything else. I have had no other income, no other business, but just this business was all I was able to do. This is the only thing I can substantiate those deposits from." Such an explanation does not, in our view, overcome the presumption of correctness given to respondent's determination. We therefore hold that petitioner has not proved such amount should not be included in his income for the year 1943. (3) Petitioner has proved that certain residential property was transferred to him from his wife, under date of October 17, 1940, and that a mortgage in the amount of $9,500 was held by the Emigrant Industrial Savings Bank, and that during the year 1943 petitioner paid said bank $949.73, but there is no evidence before us as to what proportion of this payment was for taxes. There is evidence that the checks were for taxes and amortization to the Emigrant Industrial Savings Bank, but no indication of the proportion *34 applicable to each. We, therefore, hold that petitioner has not proved that the respondent erred in disallowing a deduction of $465 claimed by him for real estate taxes. (4) The petitioner introduced no evidence in regard to the negligence penalty. We, therefore, hold that the respondent did not err in assessing a 5 per cent negligence penalty in accordance with section 293 (a) of the Internal Revenue Code. Decision will be entered for the respondent.